Argued January 28, reversed February 23, rehearing denied March 22, 1927.

## C. A. BABCOCK CO. *v.* ALMA D. KATZ ET AL.

(253 Pac. 373.)

Partnership—Whether Plaintiff Extended Credit to Defendants as Partners, on Strength of Their Representations That They were Partners, Held for Jury.

1. Evidence *held* sufficient to take to jury question whether defendants held themselves out to plaintiff as copartners, on faith of which credit was extended to them as partners.

Pleading—Reply, Alleging Equitable Estoppel on Part of Defendants to Deny Partnership, is not Departure from Complaint Seeking Recovery of Balance for Goods Sold to Partnership (Or. L., § 798).

2. Reply, alleging grounds for equitable estoppel on part of answering defendants as to denial that they were partners, is not

---

2.   See 10 R. C. L. 841.

departure from complaint against defendants as partners, seeking recovery of balance due for goods sold to partnership, since equitable estoppel is available at law, and may be pleaded in law actions, in view of Section 798, Or. L.

**Partnership—Defendants, Who Held Themselves Out as Partners, are Liable for Goods Furnished Them as Such, Without Proof of Actual Existence of Partnership by Creditor.**

3. One furnishing goods to defendants as partners, following their representations that they were partners, need not prove partnership to recover, since defendants are liable if they induced plaintiff to extend credit by holding themselves out as partners, regardless of whether partnership actually existed.

**Evidence—Creditor of Alleged Partnership may Prove Partnership or Holding Out of Partnership by Any Competent Testimony (Or. L., § 713).**

4. One furnishing goods to defendants as partners, following their representations that they were partners, was not partner to agreement between defendants and not bound thereby, but could prove partnership or holding out of partnership by any competent testimony, notwithstanding Section 713, Or. L., providing that evidence of terms of written agreement is inadmissible as between parties.

**Partnership—Judgment may be had Against Two of Three Partners, Without Service on the Other Who had Absconded (Or. L., §§ 180, 181).**

5. In action against three defendants who were alleged to be partners, judgment may be obtained against two, though the other who had absconded had not been served, in view of Sections 180, 181, Or. L.

**Joint Adventures—Defendants, Operating Farm Under Agreement to Share Profits and Expenses, were Engaged in Joint Enterprise, and as Such were Liable for Expenses of Conducting Business.**

6. Defendants operating farm under agreement by which expenses and profits were divided between them were engaged in joint enterprise, and as such were liable for expenses of conducting business.

---

Estoppel, 21 **C. J.**, p. 1113, n. 52, p. 1114, n. 53, p. 1118, n. 3.
Evidence, 22 **C. J.**, p. 1114, n. 56, p. 1292, n. 71, p. 1293, n. 72.
Joint Adventures, 33 **C. J.**, p. 872, n. 30.
Partnership, 30 **Cyc.**, p. 391, n. 82, p. 392, n. 84, 85, p. 395, n. 97, p. 406, n. 77, p. 570, n. 72 New.
Pleading, 31 **Cyc.**, p. 259, n. 56.

From Multnomah: Robert G. Morrow, Judge.

Department 2.

The plaintiff is a domestic corporation and brought this action against the defendants as partners alleg-

---

3.   See 20 **R. C. L.** 1067.
6.   See 15 **R. C. L.** 505.

ing a sale on and between March 1, 1922, and January 23, 1924, to defendants of merchandise consisting of grain and feed of the reasonable and agreed value of $3,681.51; that defendants had paid the sum of $1,917.95, leaving a balance of $1,763.56 due plaintiff for which it demands judgment. The defendants Katz and Wight answered admitting the corporation of plaintiff, denying that they were partners, admitting the sale and delivery of feed to the amount of $1,917.95 and allege that they had paid that amount and deny the other allegations of the complaint. For further and separate answer to the complaint the answering defendants allege that they are the joint owners of a farm near the City of Vancouver, Washington, known as Waucomah Farm, and certain livestock and equipment, and during the period alleged in the complaint leased the farm and equipment to the defendant Lipp, who was in possession thereof during said sale and operating the same as a tenant of the answering defendants; that by the terms of said lease said Lipp and his family received for their services in the operation of said ranch one half of any profits derived therefrom; that from time to time and between March 1, 1922, and January 23, 1924, upon advice of defendant Lipp that such grain and feed was needed in connection with the maintenance of the stock of the answering defendants, they ordered and purchased from plaintiff herein merchandise in the form of grain and feed of the reasonable value of $1,917.95 with the express instruction to and agreement with plaintiff that bills covering any purchase of grain and feed made for their ranch and property should be presented by plaintiff to them or one of them on or before the tenth day of the month following such purchase; that the answering defendants

during all of said time made monthly settlements of all outstanding bills or charges made by supplies furnished the ranch aforesaid and did not require or desire credit from plaintiff in any sum or amount; that they of necessity required knowledge of all expenses and charges for operating the ranch in order that they might determine the share of profits, if any, to which their tenant Lipp was entitled to participate; that plaintiff rendered to the answering defendants bills covering such hay and feed in the aggregate amount of $1,917.95 which they paid.

"That said bills and statements so by plaintiff to these answering defendants rendered from time to time, * * each purported and were by plaintiff intended in each instance to represent to these answering defendants the full sum and amount then from these aswering defendants, or either of them, due to plaintiff, and were so understood and believed by these answering defendants, and by them relied upon in making settlement from time to time with their said tenant and codefendant J. A. Lipp."

The answer further avers that on or about the first day of January, 1924, the defendants relying upon the accuracy of said bills settled with their alleged tenant Lipp for the calendar year 1923 and prior years; that not until after such settlement and on or about the first day of February, 1924, after the defendant Lipp had absconded and left the State of Washington for parts unknown, were the defendants or either of them advised of the indebtedness claimed by plaintiff herein; that during the period from March 1, 1922, to January 23, 1924, plaintiff and its officers and agents furnished defendant Lipp, for uses and purposes to the answering defendants unknown, certain goods, wares and merchandise claimed by plaintiff to be of the reasonable and agreed value of

$1,763.56; that defendant Lipp is insolvent and, having absconded and his whereabouts being unknown, plaintiff ought not to be allowed to recover said sum of $1,763.56, or any other sum. The reply puts in issue the affirmative allegations of the answer and for a separate and further reply alleges that the answering defendants should be estopped from denying their liability and partnership for the reason that when said Lipp first applied to plaintiff for credit and at said Lipp's suggestion the plaintiff called the defendant Katz by phone and informed said defendant Katz that Lipp had requested credit for the purpose of buying food for the ranch and that he and the answering defendants were partners operating a dairy on said ranch; that said defendant Katz confirmed Lipp's statement that they were partners and directed the plaintiff to permit him to buy such merchandise in the way of feed and seed for the ranch as he might desire and further alleges:

"That, if the defendants were not partners in said dairy or dairy farm and defendant Lipp was not their partner and agent, plaintiff was without knowledge of that fact and was without means of acquiring that knowledge other than from the conduct, statements and representations of the defendants as hereinbefore alleged; that said statements and representations and the course of conduct so made and followed by the defendants as aforesaid and each and all of them, if not true, were made and done with the intent on their part to deceive and mislead the plaintiff and with the intention that plaintiff should rely and act thereon, and sell to them feed, etc., and extend to them credit as aforesaid, and plaintiff did rely and act thereon and did sell to them feed and seed, etc., and extend to them credit therefor and was thereby deceived and misled to its prejudice, and that unless

the estoppel hereby pleaded by it is sustained it will sustain serious and material injury.''

The defendant Lipp having absconded before the commencement of this action was not served and made no appearance.   At the close of taking the testimony the trial court upon motion of defendants appearing directed a verdict in favor of the defendants. From the consequent judgment the plaintiff appeals. The verdict was directed for the defendants upon the theory that insufficient evidence had been introduced to submit the case to the jury.   The only question presented by the appeal is whether or not there is any material evidence tending to prove the partnership between the defendants or the joint liability of the defendants.        Reversed.   Rehearing Denied.

For appellant there was a brief and oral argument by *Mr. George F. Alexander.*

For respondents there was a brief over the name of *Messrs. Ridgway, Johnson & Montgomery,* with an oral argument by *Mr. Hugh Montgomery.*

COSHOW, J.—1. The first witness for the plaintiff, C. A. Babcock, president and manager of the plaintiff corporation, testified as follows:

''Q. Just tell the jury how this account happened to be opened, this account in question, the Waucomah Farm, with J. A. Lipp & Company. A. Why, he came there first, they were buying through another house and we were filling the order for this house and he came in one day and wanted to know why he could not buy direct.   He said he and Mr. Katz were partners in the Waucomah Farm and he would like to buy from us as it was a lot more convenient; he didn't like to go to the west side of the river and pick up what he wanted and it was more convenient

for him to stop at our place and pick up what he wanted. I said I didn't know who the Waucomah Farm was. He said: 'Go call up Mr. Katz.' While he was staying there I did, and Mr. Katz said what he told me was correct, that they were running the Waucomah Farm as a partnership and whatever Mr. Lipp required at any time to let him have and it would be all right, and he would see that the bills were taken care of. On his say-so we started to sell Mr. Lipp.

"Q. How did you enter that account in your books? A. J. A. Lipp, Waucomah Farm. * *

"Q. To whom did you look for the payment of this account? A. To Mr. Katz, although every check that I received at the time, I think, came from Mr. Lipp.

"Q. You say you looked to Mr. Katz; did you look to Mr. Katz for the payment of this account? A. Well, the checks came from Lipp but then at the same time I was figuring that Mr. Katz was responsible just the same.

"Q. Responsible how? A. Of the Waucomah Farm."

Mrs. Lipp, wife of defendant Lipp, testified to the effect that on Sunday, after her husband had absconded, the defendants Katz and Wight came to her residence on the Waucomah Farm and carried away all of the papers, including checks, letters and the contract between the defendants; that at that time the defendant Katz stated that as partners they desired to examine the papers belonging to the defendant. She also testified to the effect that the defendant Wight said they must take away all the papers which indicated a partnership. The conduct of the parties tends to support the contention of the plaintiff that a partnership existed. The witness Babcock, president of the plaintiff corporation, testified that he had not personally known either of the defendants Katz or

Wight. For a short time he sent the bills to the offices
of the Waucomah Farm, Corbett Building, Portland,
Oregon. Instead of paying the bills monthly as
agreed when the account was opened, the defendants
took about sixty days in which to make the payments.
When Mr. Babcock complained of the delay he was
informed by the defendant Lipp that as the bills were
sent to the defendants at their office in the Corbett
Building, it was necessary for the defendants Katz
and Wight to refer the bills to Lipp for his avouch-
ment which caused delay; that if the plaintiff would
send its bills directly to defendant Lipp at the Wau-
comah Farm they would be paid more promptly. Ac-
cordingly, thereafter, until late in 1923, the bills were
mailed to Lipp at Waucomah Farm. Instead, how-
ever, of the payments being made directly by the
Waucomah Farm, defendants Katz and Wight paid
the amounts to the defendant Lipp who in turn gave
his personal check. Payments were thereafter ir-
regularly made in that manner until the autumn of
1923. The defendants Katz and Wight referred in
their testimony to themselves as partners as do their
counsel in propounding questions to them. There
was therefore material evidence that the defendants
Katz and Wight had held themselves out to plaintiff
as copartners, and upon the faith of such representa-
tions the credit was extended to the defendants as
partners under the firm name and style of Waucomah
Farm. Most of the payments made on account were
made by the personal checks of defendant Lipp.
None of the merchandise sold to the defendants was
ordered by either Katz or Wight. They admit in
their pleadings that they ordered through Lipp a
large part of the merchandise sold to the defendants
by plaintiff, and claim credit for all payments made

by Lipp. They also testified that all the money paid by Lipp to the plaintiff on account came from the produce of Waucomah Farm.

2. The reply alleging grounds for estoppel on the part of the answering defendants as to a partnership is not a departure from the complaint: *Mayes* v. *Stephens,* 38 Or. 512 (63 Pac. 760, 64 Pac. 319). Equitable estoppel is available at law as well as in equity.

"Estoppel by misrepresentation, or equitable estoppel, is defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, *both at law and in equity,* from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of contract or of remedy. This estoppel arises when one by his acts, representations, or admissions, * * intentionally * * induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." 21 C. J. 1113, § 116.

The uniform practice in this state has been to plead equitable estoppel in actions at law: *Collins* v. *Delashmutt,* 6 Or. 51, 54; Section 798, subd. 4, Or. L.; *Doerstler* v. *First Nat. Bank,* 82 Or. 92 (161 Pac. 386); *Carlon* v. *First Nat. Bank,* 80 Or. 539 (157 Pac. 809); *Verrell* v. *First Nat. Bank,* 80 Or. 550 (157 Pac. 813).

3. It is not essential to plaintiff's cause of action that he prove a copartnership between the defendants. This is not an action between copartners. If the defendants Katz and Wight held themselves out as partners with Lipp and the plaintiff was thereby

induced to extend the credit given defendants, they are liable as partners to the plaintiff.

"Persons who are not actually partners may nevertheless become subject to the liabilities of partners, either by holding themselves out as such to the public and the world generally, or to particular individuals; or by knowingly or negligently permitting another person to do so. Yet in fact such a person does not become a partner; he is merely liable as a partner; for individuals may be liable as partners as to third persons, while as between themselves they are not to be considered partners. * * The liability as a partner of a person who holds himself out as a partner, or permits others to do so, is predicated on the doctrine of estoppel, and on the policy of the law seeking to prevent frauds on those who lend their money on the apparent credit of those who are held out as partners. The question of liability does not depend on the intention of the parties, for persons who are not partners may by estoppel be held to the responsibilities of partners directly contrary to their own intentions." 20 R. C. L. 1067, 1068, § 312.

*Morback* v. *Young,* 51 Or. 128 (94 Pac. 35); *Thompson* v. *First Nat. Bank of Toledo,* 111 U. S. 529 (29 L. Ed. 507, 4 Sup. Ct. Rep. 689); 1 Bates, Law of Partnership, § 90; *Winship* v. *Bank of United States,* 30 U. S. (5 Pet.) 527 (8 L. Ed. 216).

4. Plaintiff was not a party to the agreement between the defendants and is not bound by its terms. As between the parties to that agreement no oral testimony would be received to contradict its terms. The statute by its very terms excludes the application of the rule to those not parties to the instrument. The rule of evidence is elementary and it should not require authority to support it. The language of the statute, Section 713, Or. L., is:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, *between the parties and their representatives or successors in interest,* no evidence of the terms of the agreement, other than the contents of the writing," excepting in cases not pertinent here.

It was permissible, therefore, for the plaintiff to prove a partnership or holding out of a partnership between defendants by any competent testimony. The conduct of the defendants towards the account with the plaintiff was not such as to arouse any suspicion on the part of plaintiff that defendant Lipp was not a partner or that he was acting dishonestly. All of the transactions between the parties hereto were held between the plaintiff and the defendant Lipp. Part of the payments made were made by defendants Katz and Wight and the other by the defendant Lipp. When the account became delinquent Lipp made very plausible explanations to plaintiff and asked for indulgence. We cannot say as a matter of law that plaintiff owed any duty to the defendants other than to send the bills as he did.

5, 6. It was not necessary to have served Lipp in order to obtain judgment against Katz and Wight: Sections 180, 181, Or. L.; *Call* v. *Linn,* 112 Or. 1 (228 Pac. 127). There can be no doubt that the defendants were jointly interested in the dairy business. By the terms of the written instrument they were to share, Katz and Wight, as one party and Lipp the other, the expenses and net profits. The language of the agreement is:

"All expenses incurred in conducting such dairy and farm shall be borne equally between the parties

of the first (Katz and Wight) and second (Lipp) part.

"It is the intention of the parties hereto that all of the products of said dairy and farm of whatsoever kind or nature shall be divided equally, or the sale price thereof divided equally between the parties of the first part and the party of the second part herein."

The agreement also provides that "each of the parties hereto shall be entitled to receive his respective profits arising from the conduct of such dairy and farm."

Without doubt the defendants were engaged in a joint enterprise and as such are liable for the expenses of conducting the business. It is immaterial in this action whether or not they were actual partners: *Clark* v. *Wick*, 25 Or. 446 (36 Pac. 165). The questions involved are questions of fact which should be submitted to a jury of disinterested men for determination. The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.   REHEARING DENIED.

BURNETT, C. J., and BROWN and BEAN, JJ., concur.