[S. F. No. 1107.   Department One.—June 1, 1899.]

## S. T. CULL, Respondent, v. SAN FRANCISCO AND FRESNO LAND COMPANY, Appellant.

CONTRACT TO CROP UPON SHARES—EMPLOYMENT NOT INCLUDED—BREACH—ACTION FOR SERVICES.—A contract for the cropping of land upon shares does not include any element of a contract of employment; and there being no original employment by the terms of the contract, the cropper does not become a servant or employee by the breach thereof on the part of the owner of the land, and he cannot, on account of such breach, maintain an action upon a *quantum meruit* for the value of his services.

ID.—REMEDY FOR BREACH—VALUE OF CONTRACT.—The remedy of the cropper against the owner of the land, for breach of the contract in refusing to permit him to perform, is to recover the value of the contract at the time of the breach, which may be more or less than the value of the labor performed.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. J. R. Webb, Judge.

The facts are stated in the opinion.

H. H. Welsh, for Appellant.

George E. Church, and W. D. Tupper, for Respondent.

BRITT, C.—Plaintiff alleged in his complaint that defendant employed him to summer fallow certain land, between four hundred and five hundred acres in area, and to plow and sow in wheat another parcel of eighty acres, both tracts being the property of defendant; he prayed judgment for the alleged value of such services. By its answer defendant denied that plaintiff did any of said work under its employment.

As nearly as we can ascertain from the evidence in the record the following facts appeared at the trial, without conflict: For several years next prior to and including the cropping season of 1895-96 plaintiff farmed "on shares" it seems, a tract of some two thousand acres of land owned by defendant, which included the parcel of eighty acres last mentioned in the complaint. In February, 1896, he entered into an agreement with defendant whereby he undertook to summer fallow the four hundred acres

and upward, first described in his complaint, lying outside of the tract he had previously farmed, and defendant agreed to advance certain cash toward paying the wages of men and for the feed of teams to be engaged in the work. Other conditions of this arrangement were stated in the testimony of plaintiff himself as follows: "I was to do the summer fallowing for my own benefit, and they," meaning the defendant, "were to advance me the money to do that summer fallowing. I was to give them one-fifth of the crop. I did this summer fallowing for my own benefit and with the expectation of receiving my pay entirely from the crop," referring to the crop which he expected to plant on the fallowed ground in the fall of 1896. He further testified that he accordingly fallowed the outside land, completing the work in April, 1896; that the defendant advanced for the expenses thereof certain cash, which subsequently he repaid; that the plowing and seeding of the eighty acre parcel was done by him in September, 1896, "under a renting . . . . providing I farmed the land and planted the seed, I was to receive a certain part of the crop . . . . three-fourths, and one-fourth would be the property of" the defendant. It further appeared that in October following plaintiff and defendant had some dispute, and in consequence plaintiff declared his intention to abandon the lands—or the greater part thereof—he had previously farmed, but refused to surrender possession except on terms to which defendant would not agree. He claimed, however, the right to retain and seed the summer fallowed land in any event. Defendant then brought an action against him, and in December, 1896, obtained judgment therein for possession of all the land—including the fallowing of the previous spring. On January 12, 1897, this action was begun. Plaintiff recovered a verdict and judgment, and defendant appeals.

The cause of action alleged in the complaint was not sustained by any evidence. Allowing that the action brought by defendant to recover possession of all the land, and the judgment obtained in that case, was a violation of defendant's agreement relative to the summer fallowing, yet what was the obligation violated? At most, only a contract for the cropping of land on shares where the owner agreed to contribute to the joint adventure the use of his land; there is no element of a contract of

employment in it; defendant had no direction of the time or the manner or the means of doing the work; it advanced some money to plaintiff in furtherance of the mutual design, but this is shown to have been merely a loan, and is a false quantity in the case; it was not defendant's crop—at least not defendant's crop solely—which was to be grown on the fallowed land; in plaintiff's view, he fallowed the ground "for his own benefit." The subsequent wrongful refusal of defendant to allow him to proceed with the contract—if there was such refusal—gave him the right to recover the value of the contract at the time of breach, which might have been more or less than the value of the labor he had performed.   As remarked in a case of the same character: "If the plaintiff was not a servant or employee of the defendant by the terms of the contract, he does not become such by the breach thereof." (*Bowers v. Graves etc. Co.,* 8 S. Dak. 385.)   To somewhat similar effect is *Walls v. Preston,* 25 Cal. 59.   See, also, on the subject of damages, *Taylor v. Bradley,* 39 N. Y. 129; 100 Am. Dec. 415; *Dickinson v. Hart,* 142 N. Y. 183.

Plaintiff's case is in no better position as concerns the eighty acres which he plowed and seeded—perhaps not as good; he seems to have done this work for his own purposes either as a tenant of the land or in expectation of renewing his previous tenancy, and afterward declined to proceed on that footing; whether this declination was with or without sufficient cause, a matter which cannot be determined from the record, there is yet no evidence from which to infer a contract of employment between him and defendant for the doing of the work.   The judgment and order denying a new trial should be reversed, with leave to plaintiff to amend his complaint should he be so advised.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are reversed, with leave to plaintiff to amend his complaint if he be so advised.

Harrison, J., Garoutte, J., Van Dyke, J.