JAMES, Respondent, vs. JAMES, Appellant.

*October 9—October 29, 1912.*

*Contracts: Master and servant: Farming on shares: Joint adventure: Breach: Measure of damages.*

Under a contract whereby plaintiff was to work defendant's farm for one year and was to be paid for his services by a share of the crops and of the increase of the stock, which provided that the parties should jointly occupy the dwelling house and share certain household expenses, that plaintiff should work out the road tax, should leave certain amounts of cut stove wood on the premises for defendant's use, and should pay the expense of

stallion service, and which gave plaintiff the right to control certain matters as to raising crops and stock, materially affecting the probable results of the year's farming, the relationship of the parties was not strictly confined to that of master and servant, but they were to a certain extent engaged in a joint adventure; and upon a breach by the defendant, preventing plaintiff from completing the cultivation and harvesting of the crop, plaintiff's damages were properly measured by the value of his share of the crops and of the increase of the stock at the time of such breach.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

In 1899, when the plaintiff was about thirteen years of age, he became a member of the defendant's family. There was, so far as appears, no blood relationship between them. The plaintiff was treated as a son and took the defendant's name, but he was not legally adopted by the defendant. About December 1, 1908, the plaintiff married and brought his wife to live in the defendant's home. At this time the plaintiff entered into an oral agreement with the defendant to work the defendant's farm for one year. In March, 1909, the contract was reduced to writing. The plaintiff was to be paid for his services by a share of the crops, a share of the products of the milk sold, and by a share of the increase of the stock of the farm.

From time to time there was trouble between the parties as to the management of the farm, and on July 9, 1909, in an altercation of this character, the defendant ordered the plaintiff from the premises. The plaintiff left the farm with his wife and went to the home of his wife's parents. On July 12, 1909, the defendant requested the plaintiff to return to the farm to complete the contract. This the plaintiff declined to do.

In December, 1909, the plaintiff began this action to recover his damages because of defendant's breach of the contract. He reduced his demand by $100, the amount he had

been able to earn between July 9, 1909, and December 1, 1909. For a second cause of action he asked judgment for the value of services rendered the defendant after he became of age and before the contract in suit was made.

The referee found that the plaintiff was not entitled to compensation for services rendered by him after he became of age and before the making of the contract in suit, because the services were rendered by the plaintiff in the position of son to the defendant, that the plaintiff had lived at defendant's home as a member of the family and had received all his necessaries, and that the services rendered were gratuitous. He also found that on July 9, 1909, when the contract was breached, the plaintiff was entitled to damages in the amount which was the value of his share of the proceeds of the farm on that day and which he had not theretofore received as his share from milk sold.

Judgment was awarded by the court in accord with the findings of the referee for the value of plaintiff's share in the crops and the increase of stock on July 9, 1909. This is an appeal from the judgment so rendered.

For the appellant there was a brief by *Earl P. Finch,* attorney, and *H. E. Swett,* of counsel, and oral argument by *Mr. Swett.*

For the respondent the cause was submitted on the brief of *W. J. Foulkes,* attorney, and *W. J. Neville,* of counsel.

SIEBECKER, J.    The referee and trial court treated the complaint as alleging a demand for damages for breach of the agreement by the defendant and held that the measure of plaintiff's damages was the value of his share of the crops and increase of the stock at the time of such breach of agreement. The appellant assails this determination of the rights of the parties upon the ground that the plaintiff's demand in the action and the judgment awarded him is upon a *quantum meruit.* We are persuaded that this contention is not the cor-

rect interpretation of the nature and the result of the action. The relationship of the parties springing from some of the features of the contract has been likened to that of master and servant, but there are other features not strictly within the relation of master and servant, such as plaintiff's duty to pay, by working on the highways, the road tax on the premises, and his obligation to leave certain amounts of cut stove wood on the premises for the defendant's use, and to pay the expense of stallion service; and also the provision that both parties should jointly occupy the dwelling house on the premises and share the cost of certain household expenses during the contract term.   We are of opinion that the trial court very properly held that the relationship of the plaintiff and the defendant under this contract was not strictly confined to that of master and servant, and that by reason of some special features of the agreement the contract "partakes somewhat of the nature of an adventure, entitling the party to a chance in the profits or benefits derivable therefrom." *Bowers v. Graves & V. Co.* 8 S. Dak. 385, 66 N. W. 931; *Taylor v. Bradley,* 39 N. Y. 129.   See, also, *Cull v. San Francisco & F. L. Co.* 124 Cal. 591, 57 Pac. 456; *Lanyon v. Woodward,* 55 Wis. 652, 13 N. W. 863.

It is to be observed that the features to which we have called attention create contractual obligations in addition to those providing a compensation for plaintiff's time, as is usual in the ordinary contract for services.   From these it appears that the plaintiff had the right of electing to raise colts on the farm and of otherwise controlling affairs on the farm, as to raising crops and stock, which materially affected the extent and probable result of the year's farming enterprise and measurably controlled the value of the proceeds of his contract.   We are persuaded that the referee correctly found that the defendant breached the contract on July 9, 1909, before it expired on December 1st, following, and that such breach caused plaintiff damages, since he was thereby pre-

vented from completing the cultivation and harvest of the growing crops and from receiving the benefit of his interest in the increase of the stock, of which the defendant had deprived him by compelling plaintiff and his wife to leave the farm. Under these circumstances the plaintiff's damages would be the value of his share of such crops and increase in stock at the time of the breach. The referee ascertained this damage so far as the evidence adduced established it. This, in our view of the case, was a proper mode of fixing the amount of damages suffered by plaintiff on account of defendant's breach of contract, and determined the value of the contract to plaintiff at that time.

Since the damages awarded were not based on the ground of discharge before expiration of an employment contract for a definite time, there could be no claim for damages for constructive services, and the question of plaintiff's obligation to hold himself in readiness to perform cannot arise and need not be considered.

The court properly awarded judgment in plaintiff's favor on the report of the referee.

*By the Court.*—Judgment affirmed.