[Civ. No. 33779.    Second Dist., Div. One.    Aug. 14, 1969.]

OAK KNOLL BROADCASTING CORPORATION, Plaintiff and Appellant, v. HUGH HUDGINGS, Third Party Claimant and Respondent.

Darby, Fleming, Anderson & Hager and Clifford R. Anderson, Jr., for Plaintiff and Appellant.

Sy R. Cohen for Third Party Claimant and Respondent.

LILLIE, J.—Respondent Hugh Hudgings is the husband of Ethelyn Hudgings, one of the defendants in an action brought against Orange Empire Productions, Inc. and others

by plaintiff-appellant. In connection with such action, a writ of attachment was levied against certain monies of Ethelyn on deposit with the Studio City Branch of Glendale Federal Savings & Loan Association. Thereafter respondent filed a third party claim (Code Civ. Proc., § 689), declaring that he had an interest therein as Ethelyn's husband and demanding the release of the funds. More specifically, it was alleged that the monies were the community property of claimant and Ethelyn acquired and accumulated by claimant from his earnings during their marriage; that as the husband he had the management and control of the community personal property (Civ. Code, §§ 172, 172a), and that such community property was not liable for the contracts of the wife after marriage unless secured by pledge or mortgage executed by the husband. (Civ. Code, § 167.) Upon the hearing to determine title to the funds, judgment was given for respondent whereunder the levying officer was ordered to release all said funds to respondent. The appeal is from such judgment.

On oral argument respondent moved to dismiss the appeal on the ground that the attachment has been dissolved and the money released.

When the matter was called for hearing in the court below appellant requested a continuance under circumstances presently set forth. It is now contended that the court abused its discretion in denying the continuance; the only other ground of appeal is the insufficiency of the evidence to sustain the determination of title in respondent.

▆ The instant matter was set down for hearing on May 20, 1968, proper notice thereof being given by respondent. Notwithstanding such prior notice (10 days), a subpoena duces tecum to the keeper of records for the savings and loan association was not served until May 17. He thereupon notified appellant's counsel that he wished to be placed "on call" and such permission was granted. On the morning of May 20, both sides answered "ready" in Department 1 and the matter was assigned to a trial department. After assignment, appellant's counsel called the savings and loan office and was advised that the records would not be ready until later in the week. When a continuance was requested, the trial judge inquired of appellant's counsel whether he knew of the above development when he answered "ready" in Department 1; although counsel answered in the negative, the motion was denied. We discern no abuse of discretion as urged. The governing statute (Code Civ. Proc., § 689, *supra*)

declares that a hearing "must be had within 20 days from the filing of such petition, unless continued as herein provided," it being subsequently provided that "The court may continue the hearing beyond the said 20-day period, but good cause must be shown for any such continuance." Inherent in the above language is the concept that time is of the essence, thus militating against appellant's claim. Too, and in light of such concept, if appellant's counsel had proceeded promptly to secure necessary attendance of the witness, appellant would not now be placed in the position of having to urge the present point. Furthermore, from experience on the trial bench we are aware of the truism that to allow a subpoenaed (and material) witness to remain "on call" is frequently to invite disaster. The trial court has a wide discretion in granting or denying continuances, and its decision will not be disturbed on review unless a clear abuse of discretion is shown. (*Estate of Kay*, 30 Cal.2d 215, 225-226 [181 P.2d 1].) Such a rule applies when the motion is made because of the absence of a material witness; and when he is absent from the trial there must be a showing that the facts expected to be shown by him cannot otherwise be shown. (*Ferrari* v. *Mambretti*, 70 Cal.App.2d 492, 493 [161 P.2d 275].) No such showing was here made.

Likewise lacking in merit is the contention that the evidence was insufficient to support the determination that title to the property was vested in respondent. ■ It must be observed, preliminarily, that since findings of fact are expressly dispensed with by section 689, Code of Civil Procedure, review in proceedings of this kind is limited by the rule that all appropriate presumptions and inferences must be indulged in support of the judgment (*Beverly Hills Thrift & Loan* v. *Western Dredging & Constr. Co.*, 190 Cal.App.2d 298, 303 [12 Cal.Rptr. 107]), which means that it must be assumed from the judgment that every essential fact was proved and found. (*Lawler* v. *Solus*, 101 Cal.App.2d 816, 818-819 [226 P.2d 348].) Stated otherwise, "If there is substantial evidence to support implied trial court findings in third party claim proceedings, these findings are conclusive upon the appellate court. [Citation.]" (*Chico Tractors, Inc.* v. *Coyle*, 215 Cal.App.2d 483, 486-487 [30 Cal.Rptr. 196].) True, as appellant properly points out, there are other principles and presumptions governing the problem here. ■ Thus, under section 689 the third party claimant has the burden of proof, and " ' 'When property is conveyed [as here] to a husband and

wife as joint tenants, the form of the conveyance is such as to destroy the statutory presumption that the property is community even though the consideration for such conveyance consists of community funds or assets; such an instrument creates a tenancy in which the interests of the husband and wife are separate property. [Citations.]' '' (*Beck* v. *Beck,* 242 Cal.App.2d 396, 406 [51 Cal.Rptr. 491].) But these principles and presumptions are operative at the trial level; thus, as stated in *Beck,* " 'Whether the evidence is sufficient to overthrow the presumption arising from the form of the instrument is a question of fact. [Citations.]' '' (P. 407.)

The only evidence received at the hearing consisted of the oral testimony of respondent and his wife. The money on deposit with the savings and loan company was in two accounts. Respondent testified that the source of the funds in the first of the accounts was his "earnings." The second account represented the proceeds from the sale of certain desert property which he had originally purchased with his earnings. Respondent further testified that each party made withdrawals from the second account either to pay taxes, to meet living expenses or to remodel their home. Also, according to respondent, "everything that my wife and I ever owned we have owned together and we have taken care of all the accounts and everything else by wills. I have left everything to my wife. She has left everything to me." Asked on cross-examination about title to the first account, respondent stated: "Joint savings account." Questioned further by appellant's counsel: "Joint tenancy? A. I don't know about the joint tenancy."

Respondent's wife, when asked by appellant's counsel about title of the first account, replied that "It is a savings that my husband and I have. About title I am not sure I know what you mean. It is a savings account." Asked a similar question as to the second account, "Is that also titled Hugh and Ethelyn Hudgings?" she answered: "I think so."

Finally, there was testimony that respondent and his wife had been married 24 years and that the first of the two accounts had been maintained for some 10 years.

While the evidence summarized above is rather meager, it does not warrant the claim by appellant that "there is not one scintilla of evidence to indicate that the property here in question was community property and therefore under the exclusive control of the husband. . . ." ■ The correct rule controlling here, in addition to those (previously set

forth) governing the review of third party claims, is found in *Beck v. Beck, supra,* 242 Cal.App.2d 396, 407: "'The finding of a trial court that property is either separate or community in character is binding and conclusive on the appellate court if it is supported by sufficient evidence, or if it is based on conflicting evidence *or upon evidence that is subject to different inferences;* and if a trial court determines that a presumption has been overcome such determination will not be disturbed on appeal if there is substantial conflict in the evidence, or, although there is no conflict, *if different inferences might fairly be drawn from the evidence.* [Citations.]'" (Italics added; p. 407.) ■■ An inference, while not in itself evidence, is the result of reasoning from evidence. (See Legislative Committee Comment following Deering's Evid. Code, § 600.) The crucial question here is whether the trial court fairly drew the inference favorable to respondent. In this regard, the record discloses the following oral conclusions by the trial court upon submission of the cause, prefaced by a reference to the "considerable volume of cases . . . heard in this department": "I do not believe I recall a single incident where the parties by their testimony evidenced a full appreciation at the time that they set up an account as to whether or not they were opening what we would call a true joint tenancy account or an account of husband and wife as their community account.

"I don't know of any case where this matter has been determined that I have personal knowledge of, where it is determined by any means other than by the manner in which they treated the account as to the deposits and withdrawals and management."

■■ This was a proper analysis of the problem since it is settled that "an understanding to hold it as community property, in spite of the form of the deed, may be shown by the conduct and declarations of the parties. [Citations.]" (*Bowman v. Bowman,* 149 Cal.App.2d 773, 775-776 [308 P.2d 906].) While the fact that the property was purchased with community funds, standing alone, is insufficient to rebut the presumption (*Gudelj v. Gudelj,* 41 Cal.2d 202, 212 [159 P.2d 656]), the evidence is uncontradicted that the accounts were opened with community earnings or the proceeds thereof. Respondent considered the account funds, while not in so many words, as "ours," declaring that "everything that my wife and I ever owned we have owned together and we have taken care of all the accounts and everything else by will."

Indeed, it is reasonably inferable that neither respondent nor his wife really understood the true nature of a joint tenancy estate. No mention appears to have been made of any right of survivorship; and, although the funds would have gone to the surviving tenant under the provisions of the Financial Code (§ 7602), respondent testified that he and his wife had made mutual wills embracing the subject property. The facts, of course, would have supported a contrary determination, but it cannot be said that the judgment is unsupported as a matter of law.

In summary, the issue here of joint tenancy versus community property is not unlike that found in *May* v. *May*, 262 Cal.App.2d 668 [68 Cal.Rptr. 863]. While the community property showing in that case was stronger, ''We are persuaded that there was sufficient evidence in this case for the trier of fact to conclude that the parties never intended to alter or change the community character of the property and that the title was placed in joint tenancy unwittingly or solely for convenience.'' (P. 673.)

In the absence of any showing in the record before us that the attachment has been dissolved and the money released or a stipulation to that effect, we are compelled to deny the motion to dismiss the appeal. The motion is denied and the judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.